OPINION
{¶ 1} Appellant, Willie A. Wynder, Jr., appeals his conviction for aggravated robbery with a firearm specification in violation of R.C.2911.01(A)(1), a felony of the first degree, and for unlawful possession of a dangerous ordnance in violation of R.C. 2923.17(A), a felony of the fifth degree, following a jury trial in the Ashtabula County Court of Common Pleas. Appellant was sentenced to three years for the robbery conviction and twelve months for possession of a dangerous ordnance to be served concurrently, and an additional three years for the firearm specification to be served consecutively to the other sentences. For the reasons stated below, we affirm appellant's convictions.
 {¶ 2} Appellant was arrested on the morning of September 2, 2000, following a confrontation in the parking lot of the Perkins restaurant located on Route 20 in Ashtabula, Ohio. At approximately four in the morning, Mindy Wright ("Wright"), Jamal Lyons ("Lyons"), and Lyons' brother, known as "D.J.", were outside the restaurant smoking and waiting for others still in the restaurant. Lyons was sitting in the driver's seat of a vehicle owned by one of the persons in the restaurant. D.J. was sitting in the passenger's seat and Wright was leaning against the car next to the driver's side door. Appellant approached the car accompanied by Eugene Holley ("Holley").
 {¶ 3} According to Wright's testimony, Holley went around to the passenger's side door and leaned against it, preventing D.J. from exiting the vehicle. Appellant approached Lyons and began screaming at him. Appellant then drew a gun out of his jacket and aimed it about six or seven inches away from Lyons' head. Wright moved toward the restaurant where there was an Ashtabula County Sheriff's Deputy inside. As she left, she heard appellant say to Lyons, "give me all the stuff that you have in your pockets and on the seat."
 {¶ 4} According to appellant's testimony, he approached the car because he recognized Lyons as the person who had jumped him earlier that evening outside a bar elsewhere in Ashtabula. As appellant confronted Lyons, Lyons left the vehicle brandishing a gun. Lyons and appellant struggled with each other and appellant wrested control of the gun away from Lyons. Appellant also testified to picking up some shotgun shells that had fallen out of the vehicle.
 {¶ 5} At this point, the sheriff's deputy, Ted Barger ("Barger"), came out of the restaurant. He observed Holley leaning inside the passenger's side door of the vehicle and appellant standing about five feet from the vehicle. As Barger drew near, appellant fled.
 {¶ 6} Officers of the Ashtabula Police Department quickly apprehended appellant outside of his home on Nathan Avenue, about four or five blocks away. Appellant was found with a 20-gauge shotgun shell in his pocket. Underneath appellant's porch, officers found a sawed-off 20-gauge shotgun, and a hat and jacket that appellant was wearing during the confrontation in the parking lot. In one of the jacket pockets were three other 20-gauge shells. The officers took appellant with the gun and the clothing back to the Perkins. Wright was able to identify the appellant as the assailant and the gun as the one appellant used to aim at Lyons. Barger identified appellant and the clothing he was wearing.
 {¶ 7} Appellant assigns the following assignments of error for review:
 {¶ 8} "[1.] The trial court abused its discretion by denying appellant's motion for a mistrial to the prejudice of the appellant.
 {¶ 9} "[2.] The appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article One of the Ohio Constitution.
 {¶ 10} "[3.] The appellant's convictions are against the manifest weight of the evidence."
 {¶ 11} In appellant's first assignment of error, appellant argues that the trial court erred by denying his motion for a mistrial. Appellant moved for a mistrial after the trial court admitted into evidence, over appellant's objection, the shotgun recovered from underneath appellant's porch. Appellant objected to the admission of the shotgun on the grounds that it was not included in the discovery list provided by the prosecution to defense counsel prior to trial.
 {¶ 12} The Ohio Supreme Court has held that "[a] motion for a new trial pursuant to Crim.R. 33(B) is addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. "A court may grant a motion for a mistrial when a party is confronted by surprising new facts or conditions which were unknown despite reasonable trial preparation," Cummings v. B.F. Goodrich Co.
(1993), 86 Ohio App.3d 176, 188 (citation omitted), and also for "intentional non-compliance with a court's discovery order." Wray v.Mussig (Sept. 20, 1996), 11th Dist. No. 97-L-172, 1996 Ohio App. LEXIS 4113, at *9. In a criminal case, a mistrial should not be ordered "merely because some error or irregularity has intervened, unless the substantial rights of the accused are adversely affected and this determination is, again, in the discretion of the trial court." State v. West (Oct. 27, 2000), 11th Dist. No. 98-P-0132, 2000 Ohio App. LEXIS 5014, at *7 (citations omitted). "In order to demonstrate an abuse of discretion on these matters, a criminal appellant must be able to show that the trial court's decision was arbitrary, unreasonable or unconscionable." Id.
 {¶ 13} In the present case, whether the trial court abused its discretion by denying appellant's motion for a mistrial turns on the propriety of the court's admission of the shotgun into evidence when the state failed to identify that item as a trial exhibit in response to appellant's discovery request. In this regard, the Supreme Court has held that "[p]rosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." State v. Joseph,73 Ohio St.3d 450, 458, 1995-Ohio-288, citing State v. Parson (1983),6 Ohio St.3d 442, 445.
 {¶ 14} In the present case, there is no indication that the state's failure to identify the shotgun as a trial exhibit was willful. The state itself was unaware of this failure until brought to its attention by defense counsel at trial. The existence of the shotgun figures prominently in the original indictments against the appellant and in the bill of particulars filed by the state in response to appellant's request. Moreover, prior to trial, the state submitted to appellant the name of the BCI expert who would be testifying about the operability of the shotgun, as well as a copy of the expert's report.
 {¶ 15} Appellant has neither demonstrated how his defense would have benefited by express foreknowledge that the gun would be introduced into evidence nor that he was prejudiced by the court's admission of the shotgun into evidence. Appellant makes the bald assertions that defense counsel was "surprised" and "greatly prejudiced" by the state's failure and that the "result of the trial would surely have been different," but provides no specific argument. Appellant's defense did not dispute the existence of the gun or that when appellant fled the parking lot that he had the gun in his possession or that the gun was recovered from under the porch of his house. In fact, at trial, appellant identified the gun as the one he allegedly wrested control of from Lyons.
 {¶ 16} Moreover, it is difficult to see how the appellant could have been surprised by the proffer of the shotgun into evidence. As indicated above, both the indictments and the bill of particulars indicate the existence of the specific gun used in the commission of the offenses with which appellant was charged, "a sawed off 20 gauge shot gun." The state submitted an expert report as to the operability of the shotgun. Finally, other state exhibits at trial included pictures of the shotgun and the four shotgun shells found on appellant's person and clothing. This other evidence should have apprised appellant that the state was contemplating introducing the shotgun. Cf. State v. Elersic, 11th Dist. No. 2000-L-145, 2002-Ohio-2945, at ¶ 25 (where the prosecution failed to disclose results of test firing prior to trial, "appellant was put on notice, via the firearm specification contained in the indictment, that the requirements for a firearm had to be proved").
 {¶ 17} In the absence of convincing evidence that appellant was surprised by the proffer of the shotgun or that the state's violation of the discovery rules was willful, we find that the court did not abuse its discretion by denying appellant's motion for a mistrial. Appellant's first assignment of error is without merit.
 {¶ 18} Appellant argues under his second assignment of error that he was denied effective assistance of counsel. On the day of trial, appellant's trial counsel filed a motion to dismiss the charges against appellant, alleging that appellant's right to a speedy trial had been violated. The trial court denied the motion on the grounds that the time the state had for bringing appellant to trial was tolled when appellant sought two continuances prior to arraignment in order to obtain counsel. Appellant maintains that trial counsel failed to investigate the circumstances surrounding appellant's arraignment prior to making the motion and that trial counsel failed to preserve this issue for review. Appellant submits that this constitutes a "constitutionally deficient performance by trial counsel."
 {¶ 19} To prevail on a claim of ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced the defense. This requires showing that "[c]ounsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Statev. Goodwin, 84 Ohio St.3d 331, 334, 1999-Ohio-356, quoting Strickland v.Washington (1984), 466 U.S. 668, 687. A Sixth Amendment violation does not occur "unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley
(1989), 42 Ohio St.3d 136, 142. To establish prejudice, a defendant must show "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus.
 {¶ 20} Appellant was arrested on September 2, 2000. Pursuant to R.C. 2945.71(C), the state had two-hundred and seventy days within which to bring appellant to trial. Appellant remained in jail from September 2, 2000, to September 12, 2000, when bond was posted for his release. Each one of these days counted as three days for the purpose of calculating the time necessary to bring appellant to trial. R.C.2945.71(E). On September 7, 2000, the state sought and was granted a continuance of the preliminary hearing until September 14, 2000, due to the unavailability of a witness. Appellant twice requested continuances of his arraignment so that the day of his arraignment was set back from November 9, 2000, to November 17, 2000. These continuances extended the time for bringing appellant to trial by fifteen days. R.C. 2945.72(H);State v. Pierson, 149 Ohio App.3d 318, 2002-Ohio-4515, at ¶ 40 (defendant's "request for a continuance extended the speedy trial period"); State v. Hirsch (1998), 129 Ohio App.3d 294, 317 ("continuances necessitated by the unavailability of a [prosecution] witness are reasonable" for tolling the time for bringing the accused to trial).
 {¶ 21} Appellant was brought to trial on May 9, 2001. Taking into account the fifteen days during which appellant's case was continued, appellant was brought to trial 243 days after his September 2, 2000, arrest.[1] We find that there was no violation of the speedy trial statute or the Sixth Amendment. Since there was no violation of appellant's right to a speedy trial, appellant could not have been prejudiced by anything trial counsel did or failed to do in regards to the motion to dismiss on these grounds. Accordingly, we overrule appellant's second assignment of error.
 {¶ 22} Under the third assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. Specifically, appellant argues that the state's only witness that the altercation in the parking lot that night was a robbery was not credible.
 {¶ 23} A manifest weight of the evidence challenge contests the believability of the evidence presented. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13. When determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility, and decide whether in resolving the conflicts in the evidence, the trier of fact lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982), 70 Ohio St.2d 79, at syllabus. The issue when reviewing a manifest weight of the evidence challenge is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v. Nields, 93 Ohio St.3d 6, 25, 2001-Ohio-1291, quoting State v. Getsy, 84 Ohio St.3d 180, 193-194, 1998-Ohio-533
(emphasis sic). When reviewing a manifest weight of the evidence challenge, an appellate court sits as the "thirteenth juror." Thompkins, supra, at 387. The granting of a new trial is exercised only in exceptional cases where the evidence weighs heavily against a conviction. Id., quoting Martin, supra, at 175.
 {¶ 24} In the present case, the jury was presented with two conflicting versions of events from the time appellant and Holley approached the vehicle in the Perkins' parking lot until the time sheriff's deputy Barger entered the parking lot. According to Wright, appellant and Holley attempted to rob the occupants of the vehicle. According to appellant, Lyons assaulted him with the shotgun and he wrested the gun away from Lyons. In convicting appellant, the jury accepted Wright's version of events.
 {¶ 25} Appellant argues that Wright was biased because, at the time of the incident, she was Lyons' girlfriend; that Wright was uncertain whether appellant was wearing a hat and how far the vehicle was parked from the entrance to the restaurant; that, if appellant had been robbing Lyons and D.J., it would make no sense for him to allow Wright to enter the restaurant to summon help. Appellant also points out that the alleged victims of the robbery, Lyons and D.J., failed to appear or testify at trial and that police found a bag of marijuana and a sheath knife in the vehicle they were occupying.
 {¶ 26} All these facts pointed out by the appellant bear on Wright's credibility as a witness and were put before the jury for the jury to consider in making its decision. They do not discredit Wright's testimony. Moreover, a jury could reasonably doubt the veracity of appellant's testimony that he wrestled the gun away from Lyons, paused to collect shotguns shells that had fallen on the ground, and then fled the scene because he was scared. We also note that Holley, who could have corroborated appellant's testimony, failed to appear as a witness.
 {¶ 27} Credibility is primarily for the trier of fact to determine. Wright's version of events is no more improbable than appellant's version. Here, the jury heard the testimony of the witnesses, deliberated thereon, and found that Wright's testimony was more credible. We cannot say the jury lost its way in finding the appellant guilty of the offenses charged so as to create a manifest miscarriage of justice.
 {¶ 28} Appellant's third assignment of error is overruled and the judgment of the Ashtabula County Court of Common Pleas is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and WILLIAM M. O'NEILL, J., concur.
[1] {¶ a} According to our calculations, a period of fifteen days lapsed between September 2 and September 7, under the triple count provision while appellant was in jail. From September 7 until September 14, the proceedings were continued on the state's motion, so no time was charged. However, fifty-five days passed from the period between September 15 and November 8. The period from November 9 to November 17 was stayed because of appellant's motions for continuance regarding his arraignment. A period of one hundred seventy-three days passed from November 17 to May 9, when appellant was brought to trial. Therefore, appellant was brought to trial well within the statutory speedy trial time since only a total of two hundred forty-three days elapsed (fifteen plus fifty-five plus one hundred seventy three), which were charged against the speedy trial count.
{¶ b} Alternatively, if we concluded that the state was not entitled to a credit for the continuance it filed on September 7, appellant would have still been brought to trial well within two hundred seventy days. Under this scenario, thirty days would have passed from September 2 to September 12, under the triple count provision, and fifty-seven days would have lapsed from September 13 to November 9. Again, one hundred seventy-three days passed from November 17 to May 9, when appellant was brought to trial. Hence, appellant was brought to trial well within the statutory speedy trial time since only a total of two hundred sixty days passed.