[Cite as *State v. Upchurch*, 2016-Ohio-7809.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-15-1315

    Appellee                                Trial Court No. CR0201501821

v.

Dontae Upchurch                          **DECISION AND JUDGMENT**

    Appellant                              Decided:  November 18, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Joseph J. Urenovitch, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Dontae Upchurch, appeals the October 30, 2015 judgment of the

Lucas County Court of Common Pleas convicting him, following a jury trial, of one

count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second

degree.  For the reasons that follow, we affirm.

**Assignments of Error**

{¶ 2} Appellant sets forth the following assignments of error:

    1. APPELLANT'S CONVITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

    2. APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE DEPRIVING APPELLANT OF A FAIR TRIAL.

    3. THE TRIAL COURT FAILED TO MAKE ALL THE NECESSARY FINDINGS UNDER R.C. 2929.14(C) FOR THE IMPOSITION OF CONSECUTIVE SENTENCES.

**Background Facts**

{¶ 3} On May 7, 2014, in case No. CR0201303200, appellant entered a plea of no contest and was found guilty of attempt to commit felonious assault in violation of R.C. 2923.02 and 2903.11(A)(1) and (D), a felony of the third degree. He was sentenced to a three-year community control sanction.

{¶ 4} On May 9, 2015, appellant and a friend, the witness, were drinking at a club. After leaving the club intoxicated, the witness testified that he and appellant were walking around downtown Toledo deciding what next to do. The witness testified appellant realized he had lost $20 and as a result became enraged. The witness also said that appellant's frustration led appellant to search for a random victim to assault, that appellant indeed attacked a victim with punches and a stomp, and that the victim fell to the floor and was yelling for help.

2.

**{¶ 5}** Sixty-seven-year-old Daniel Streeter, the victim, was walking near downtown Toledo. An individual, who the victim described as a young dark skin male, randomly attacked him. The victim testified to the severity of the attack. The perpetrator broke his glasses and nose, knocked him to the ground, caused bodily injury, lacerations, scars and severe mental anguish. The victim also stated on record how the attack led to developing a perpetual fear of black males, which was new because he had never experienced it despite teaching young black males in the inner-city for the greater part of 40 years.

**{¶ 6}** Officers responded to the scene of the assault within seconds. The victim was reportedly injured and bloodied. Two black males were observed walking approximately three quarters of a mile from the attack. An officer's testimony confirmed this attack was the only assault reported within the area that evening, and that the two young black males were the only people seen in the area to match the description of the perpetrator.

**{¶ 7}** An officer approached the two males, who were appellant and the witness. Immediately upon approaching, the officer testified that the witness stated in an excited manner that appellant was the one responsible for the attack. Medical assistance was called to address appellant's injured hands; the witness had no such injuries. The two were detained and subsequently interviewed.

**{¶ 8}** At the police station, appellant waived his *Miranda* rights. According to the interviewing officer and photos submitted as evidence, appellant's hands were bleeding

3.

and cut and there was blood on appellant's pants. Appellant explained his injuries were from striking of a random victim. Appellant confessed to landing at least two punches and a kick. The confession was recorded and admitted to evidence without objection.

{¶ 9} The witness was also interviewed. The witness confirmed he observed appellant attack an "old man," and he also verified the location in and time at which it occurred.

{¶ 10} On May 18, 2015, appellant was indicted by the Lucas County Grand Jury for felonious assault, brought under case No. CR0201501821. On October 19, 2015, a jury trial commenced and the witness, victim, and three officers testified. The victim's medical records, pictures, appellant's interview recording, and a surveillance video of downtown Toledo were all presented and admitted as evidence.

{¶ 11} On October 20, 2015, appellant was found guilty on the sole count of felonious assault. This triggered a violation of his community control sanction of case No. CR0201303200. The sentencing hearing occurred October 28, 2015.

{¶ 12} For case No. CR0201501821, appellant was sentenced to five years incarceration and three years mandatory postrelease control. For case No. CR0201303200, appellant was sentenced to two years incarceration and three years discretionary postrelease control. The latter sentence imposed was ordered to be served consecutively to the former. The sentencing entry was journalized October 30, 2015.

{¶ 13} On December 10, 2015, appellant filed a motion for leave to file a delayed appeal along with notice of appeal. This court granted the motion and appellant now appeals from the October 30, 2015 judgment.

**Assignment of Error No. 1**

{¶ 14} In the first assignment of error, appellant argues the evidence weighs heavily against his convictions, the jury lost its way, and a miscarriage of justice occurred when the jury found him guilty of felonious assault. Appellee contends the verdict and subsequent convictions are supported by the manifest weight of the evidence.

{¶ 15} The standard of review for manifest weight is the same in a criminal case as in a civil case, and an appellate court's function is to determine whether the greater amount of credible evidence supports the verdict. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A manifest weight of the evidence challenge contests the believability of the evidence presented." (Citation omitted.) *State v. Wynder*, 11th Dist. Ashtabula No. 2001-A-0063, 2003-Ohio-5978, ¶ 23. The appellate court, as if the "thirteenth juror" must review the record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier-of-fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387.

5.

{¶ 16} R.C. 2903.11(A)(1) states no person shall knowingly cause serious physical harm to another.

{¶ 17} Here, appellant admitted to striking a victim at least three times in the early morning of May 9, 2015. The witness also testified to observing appellant strike the victim numerous times, including landing four to five punches and a stomp. The witness's testimony revealed appellant was enraged over losing $20 and had intent to harm a random victim with his attack. The witness's relevant testimony was:

> **Witness:** He see the man. He just, you know, throw a punch. The man just dropped instantly. I just hear the man say, why would you do that? You know, I'm just over there like Dontae, man, why? Come on bro. We got to go. Stop, bro. Come on, let's leave. Just kept punching him. Punched him a couple more times, and then he stepped on him—like jumped on him, and it was done. * * * I sobered up ASAP because that woke me up seeing somebody get tortured like that. I knew it was an old man. He was pleading like for—help me. Please stop. Why would you do that? And it just—it just happened like that.

{¶ 18} Further, three officers testified to witnessing the bloody scene after the attack, witnessing the severity of the victim's sustained injuries, and/or witnessing the condition of appellant's hands that morning, which were reportedly freshly cut, bleeding and with visible abrasions. The officers also confirmed no other assaults were reported in the area that night.

6.

{¶ 19} The victim's testimony corroborated his physical condition after the attack, the location of the attack, and the permanent trauma the attack caused him.  In regard to the trauma, he testified as follows:

> **Victim:**  From the first hit I couldn't see anything.  I had blood all over the place.  My glasses were shoved up into my nose so I couldn't really see anything more. * * * I was bleeding so bad I took my shirt off first to try to stop the blood.  I was going to try for home, and I turned around to kind of get my balance to figure out where I was because I had to pull the piece of my glasses out of my nose. * * * I could not breathe.  I was trying to breathe through my nose obviously.  I couldn't.  It was broken. * * * I was full of blood.  They didn't wash the blood at the hospital.  So first look I got the blood was all over me.  My nose was swollen.  My eyes were both black and blue[.]

{¶ 20} The victim also made the following statements related to the seriousness of the attack and harm:

> **Victim:**  Worse yet is the continuing result of this attack.  I have lived my entire life in the inner city of Toledo.  Furthermore in my 45 years as a teacher I spent 40 years by choice in the inner city schools, some of them the most challenging but I loved it, and I loved those that I was privileged to teach. * * * When people walk towards me I tense up.  Worse of all, Your Honor, it tears at the very core of my being that after decades

7.

of teaching young minds to embrace and on our diversity I now see a young man of color walk toward me and I am apprehensive of that. Breaks my heart. * * * this is a great source of distress, anxiety, and depression for me.

{¶ 21} Consequently, we cannot say a miscarriage of justice occurred when the jury found appellant caused serious physical harm to the victim. The first assignment of error is not well-taken.

<b>Assignment of Error No. 2</b>

{¶ 22} In the second assignment of error, appellant argues he was deprived effective assistance of counsel because his appointed counsel did not challenge his confession nor maintain a clear trial strategy. Appellee contends appellant's confession was lawful and appellant's trial strategy consisted of discretionary, tactical decisions.

{¶ 23} In evaluating ineffective assistance of counsel claims, the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus; *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674, 693 (1984). A court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). To show prejudice, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the

8.

trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶ 24} Here, appellant highlights counsel's failure to challenge the confession, counsel's lack of cross-examination, and counsel's failure to question the credibility of the witness's testimony as errors which violated essential duties.

{¶ 25} However, with regard to appellant's confession, the record reflects it was voluntary and given after *Miranda* warnings were properly administered. The interviewing officer testified appellant was not too impaired to understand, and his opinion and assessment were based on the officer's over 10 years of working undercover in bars and dealing with intoxicated persons. Therefore, we cannot say failing to challenge a lawful confession is violation of essential duties.

{¶ 26} With regard to counsel's trial strategy, the record reveals appellant's counsel cross-examined witnesses, made objection during trial, and attempted to cast reasonable doubt by implicating the witness, and not his client, as the attacker. Thus, we find counsel had sound trial strategy in mounting a defense for appellant and there is nothing on record to support that a substantial violation of counsel's essential duties occurred.

{¶ 27} Lastly, appellant fails to articulate how counsel's tactical decisions during trial prejudiced his rights, and we find even if counsel's errors were deemed a violation of essential duties, the amount of evidence supporting appellant's conviction is nevertheless overwhelming. Specifically, appellant's cut hands and bloody pants, the witness's

9.

testimony and interview, the victim's corroboration of the facts, along with the testifying officers, the pictures, and the surveillance video support the conviction. In short, we are not convinced were it not for any of the alleged errors the result would be different.

{¶ 28} Accordingly, the second assignment of error is not well-taken.

**Assignment of Error No. 3**

{¶ 29} In the third assignment of error, appellant argues the trial court erred in imposing consecutive sentences because the trial court did not support its findings with specific reasons. Appellee contends consecutive sentences were properly imposed because the trial court made the necessary findings under R.C. 2929.14(C)(4)(a).

{¶ 30} As articulated in *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 11:

> R.C. 2953.08(G)(2) establishes that an appellate court may increase, reduce, modify, or vacate and remand a dispute sentence if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13 (B) or (D), division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 31} "[T]o impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and

10.

incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.  R.C. 2929.14(C)(4)(a) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:  (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶ 32} Here, the trial court made the necessary findings in open court and in its sentencing entry.  At the October 28, 2015 hearing, the court stated:

> As it relates to CR13-3200 and CR15-1821 those sentences are ordered served consecutive finding that the Defendant was under community control at the time of the commission of the new offense and that the Defendant's criminal history would require the consecutive sentences, as well as the harm caused was great and unusual so that no

11.

single prison term would be appropriate and the consecutive sentences accurately * * * reflects the seriousness of his conduct and no single sentence would adequately reflect the seriousness of the conduct.

{¶ 33} Further, in the October 29, 2015 entry, the court stated:

The sentence is to be served consecutively to the sentence imposed in case CR#13-3200. Being necessary to fulfill the purposes of R.C. 2929.11 and 2929.14(C)(4), consecutive sentences are necessary to protect the public from future crime or to punish the offender and are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The court further finds defendant was on community control, the harm caused was great or unusual such that no single prison term is adequate, and the defendant's criminal history demonstrates that consecutive sentences are necessary to protect the public.

{¶ 34} Based on the record, appellant was unprovoked yet broke the victim's nose, caused lacerations and lasting mental anguish, was a repeat assault offender, and was on community control for case No. CR0201303200 when indicted in case No. CR0201501821. Consequently, there is ample support for the trial court's findings under R.C. 2929.14(C)(4)(a), and we agree the imposed consecutive sentences were neither disproportionate to the seriousness of appellant's conduct nor to the danger he poses.

{¶ 35} Accordingly, the third assignment of error is not well-taken.

12.

## Conclusion

{¶ 36} The judgment of the Lucas County Court of Common Pleas is affirmed.

Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

Stephen A. Yarbrough, J.

James D. Jensen, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE