[Cite as *In re Adoption of B.V.K.M.*, 2019-Ohio-1173.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


In re Adoption of B.V.K.M.

Court of Appeals No. L-18-1137

Trial Court No. 2017 ADP 000127


**DECISION AND JUDGMENT**

Decided: March 29, 2019

* * * * *

Brian J. Ballenger, for appellant.

Jill M. Varnes-Richardson, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from the May 23, 2018 judgment of the Lucas County Court of Common Pleas, Probate Division, by appellant, D.L., the father of B.V.K.M., and the cross-appeal of appellee, C.W.M., the stepfather of B.V.K.M. For the reasons that follow, we reverse the judgment, in part, and affirm, in part.

**{¶ 2}** Appellant sets forth one assignment of error:

The ruling of the trial court that appellant's consent to the adoption of his biological child was not required due to his failure to have contact with her for more than a year without justifiable cause was against the manifest weight of the evidence.

**{¶ 3}** Appellee sets forth one cross-assignment of error:

The ruling of the trial court that the appellant was justified in not paying support to B.V.K.M. is against the manifest weight of the evidence.

## Background

**{¶ 4}** Appellant is the biological father of B.V.K.M., who was born in August 2006. Appellant and B.V.K.M.'s mother were never married, and mother left appellant before B.V.K.M. was born.

**{¶ 5}** On May 17, 2007, the Lucas County Court of Common Pleas, Juvenile Division, named mother the residential and custodial parent of B.V.K.M. The juvenile court ordered appellant to pay zero dollars monthly for child support, and ordered that appellant was responsible for extraordinary medical expenses of the child. The court also ordered appellant and mother to provide health insurance coverage for the child. This support order was entered while appellant was incarcerated.

**{¶ 6}** On April 16, 2009, appellant filed a motion to modify the allocation of parental rights and responsibilities ("motion to modify") with the juvenile court, seeking

2.

visitation with B.V.K.M. In January 2010, appellant and mother reached a settlement regarding appellant's visitation with the child.

{¶ 7} In August 2010, mother and appellee were married.

{¶ 8} Appellant visited with B.V.K.M. until November 28, 2015, when an incident occurred at appellant's home during a visit which caused the child to be very upset when she returned to mother's house ("the incident"). Appellant and mother then spoke on the phone and had a disagreement about who would be at appellant's house during visits with the child. As a result, the visits between appellant and the child stopped.

{¶ 9} On December 28, 2015, appellant filed a motion to modify with the juvenile court seeking unsupervised visits with B.V.K.M. An evidentiary hearing was held on May 26, 2016, and although appellant was at the courthouse, he left before the hearing started due to a disagreement with his attorney and his overwhelming anxiety. Appellant had also failed a drug test.

{¶ 10} On June 30, 2016, the juvenile court magistrate issued a decision finding appellant has a history of mental health and substance abuse, which the guardian ad litem ("GAL") confirmed are "currently untreated." The magistrate followed the GAL recommendation that appellant's contact with B.V.K.M. be suspended until further order.

{¶ 11} On July 13, 2016, the juvenile court judge issued a judgment entry adopting the magistrate's decision that it was in the child's best interest that appellant's contact with the child be suspended in its entirety effective May 26, 2016, until further of the court.

3.

{¶ 12} On October 6, 2017, appellee filed a petition to adopt B.V.K.M. with the probate court, in which he alleged mother's consent to the adoption was required but appellant's consent was not required because appellant failed without justifiable cause to provide more than de minimis contact with the child for at least a year before the adoption petition was filed, and appellant failed without justifiable cause to provide for the maintenance and support of the child for at least a year before the adoption petition was filed. Mother provided her consent to the adoption; appellant filed an objection to adoption.

{¶ 13} On October 10, 2017, appellant filed a motion to modify with the juvenile court, seeking supervised visits with B.V.K.M.

{¶ 14} On April 23, 2018, a hearing was held in the probate court on the issue of appellant's consent. Appellant and mother both testified. Appellant testified, inter alia, he receives Social Security, Medicaid and Medicare, he lives with his girlfriend and her son, and he shares some expenses with his girlfriend. Appellant agreed that following the disagreement in November 2015, mother told appellant not to call, text or come over anymore. In addition, appellant acknowledged the magistrate suspended appellant's visitation with B.V.K.M. and his older daughter, R.L.L.,[1] in June 2016. Appellant testified he filed an action seeking visits with R.L.L. on February 1, 2017, but did not seek visits with both children because "it was discussed at Harbor with my doctors that

---

[1] R.L.L. has a different mother.

4.

we file [for visits] for [R.L.L.] and do one [child] at a time." Appellant admitted he filed a motion to modify so he could visit with B.V.K.M. after the adoption petition was filed.

{¶ 15} Mother testified at the hearing, inter alia, that she never asked appellant to pay any extraordinary medical expenses for B.V.K.M., and B.V.K.M. was covered under mother's health insurance through work. Mother further testified that from either the end of 2014 or the beginning of 2015, until November 2015 when appellant's visits stopped, appellant gave her $100 per month to help with B.V.K.M.'s needs. Mother stated appellant has always received one version or another of Social Security benefits.

{¶ 16} With respect to the incident in November 2015, mother testified appellant said there were people at his house during the visit and there was a gun, but it was a BB gun. In addition, mother testified appellant admitted there were drugs at his residence.

{¶ 17} The parties also stipulated to certain facts, including: appellant had no contact with B.V.K.M. for one year preceding the filing of the adoption petition, and his last contact with her was November 28, 2015; appellant voluntarily paid mother $100 to help support B.V.K.M. until late 2015, and he has provided no financial support for B.V.K.M. since that date; appellant has not provided any gifts to B.V.K.M. for one year preceding the filing of the adoption petition; appellant has an extensive history of severe and persistent mental illness, and began treatment when he was about eight years old; and, on March 1, 2018, the juvenile court permitted appellant to have visits with R.L.L.

{¶ 18} On May 23, 2018, the probate court issued its judgment entry. Regarding child support and maintenance, the court noted appellant was subject to a zero dollar

5.

support order, he was responsible for extraordinary medical expenses for B.V.K.M., but was never asked to pay, and B.V.K.M. was covered under mother's health insurance. The court found appellee failed to prove appellant's consent was not required due to appellant's failure to provide maintenance and support.

{¶ 19} With respect to appellant's contact with B.V.K.M., the court found, pursuant to the stipulations, appellant had no contact with B.V.K.M. since November 28, 2015. The court observed appellant filed several motions to modify in the juvenile court, including one which was filed several days after the adoption petition was filed. The court noted appellant attached to his October 10, 2017 objection to adoption, a letter dated April 11, 2017, from a psychiatrist in which the doctor opined appellant had received significant benefits from his treatment program and was ready for visitation with R.L.L. The court acknowledged appellant testified that a determination was made that appellant would proceed with an attempt to visit R.L.L. first, yet stated, "the court does not understand this reasoning. Had [appellant] filed for visitation with the child who is the subject of this matter at the same time he filed for visitation with [R.L.L.], the juvenile court could have addressed that issue." The court continued, "[i]nstead, he made no effort to obtain visitation with the child who is the subject of this adoption." The court found appellant failed without justifiable cause to provide more than de minimis contact with B.V.K.M. for at least a year before the adoption petition was filed. The court further found appellant's consent in the adoption proceeding was not required. Appellant appealed and appellee cross-appealed.

6.

**Appellant's Assignment of Error**

{¶ 20} Appellant argues his consent to the adoption of B.V.K.M. was required because his lack of contact with her for more than a year was justified because of the juvenile court's no contact order. Appellee counters the no contact order did not prevent appellant from filing a motion to modify, as appellant had done in his other daughter's case.

**Law**

{¶ 21} R.C. 3107.07(A) provides that consent to an adoption is not required of a parent of a minor child

> when it is alleged in the adoption petition and the court * * * finds
> by clear and convincing evidence that the parent has failed without
> justifiable cause to provide more than de minimis contact with the minor or
> to provide for the maintenance and support of the minor as required by law
> or judicial decree for a period of at least one year immediately preceding
> either the filing of the adoption petition or the placement of the minor in the
> home of the petitioner.

{¶ 22} In *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23, the Ohio Supreme Court determined probate courts must undertake a two-step analysis when applying R.C. 3107.07(A). In the first step, the court decides the factual question of whether the parent willfully failed to provide for the support and maintenance of the child for at least one year immediately preceding the filing of the adoption petition.

7.

*Id.* at ¶ 21, 23. An appellate court reviewing this decision applies an abuse-of-discretion standard. *Id.* at ¶ 25. In the second step, if the probate court finds the parent has failed to support the child, the court then determines whether there was justifiable cause for the failure. *Id.* at ¶ 23. This determination will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* at ¶ 24.

{¶ 23} With respect to a parent's contact with the child, the probate court also uses a two-step analysis. *In re Adoption of K.A.H.*, 10th Dist. Franklin No. 14AP-831, 2015-Ohio-1971, ¶ 7. The first step involves the factual question of whether the petitioner has proven, by clear and convincing evidence, that the parent failed to have more than de minimis contact with the child for at least one year immediately preceding the filing of the adoption petition. *Id.* An appellate court applies an abuse-of-discretion standard when reviewing this decision. *Id.* In the second step, if the probate court finds the parent failed to have more than de minimis contact with the child, the court then determines whether there is justifiable cause for the failure. *Id.* This determination will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.*

{¶ 24} The consent provisions of R.C. 3107.07(A) are to be strictly construed in order to protect the interests of the non-consenting parent. *Id.*, citing *In re Adoption of Sunderhaus*, 63 Ohio St.3d 127, 132, 585 N.E.2d 418 (1992).

8.

**Standards**

**{¶ 25}** Clear and convincing evidence is defined as:

> that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Cross v. Ledford, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶ 26}** An abuse of discretion connotes that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 27}** "A manifest weight of the evidence challenge contests the believability of the evidence presented." (Citation omitted.) *State v. Wynder*, 11th Dist. Ashtabula No. 2001-A-0063, 2003-Ohio-5978, ¶ 23. A determination is not against the manifest weight of the evidence when it is supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**Analysis**

**{¶ 28}** Upon review, we find appellee has met his initial burden of proving appellant did not provide more than de minimis contact with B.V.K.M. in the one-year period prior to the filing of the petition for adoption. The record shows the adoption petition was filed on October 6, 2017, and appellant stipulated he had no contact with

9.

B.V.K.M. since November 28, 2015.  We therefore find the probate court did not abuse its discretion in finding appellant had no contact with B.V.K.M. since 2015, which was more than one year before the adoption petition was filed.

{¶ 29} Regarding whether the lack of contact was justified, appellee asserts appellant had the ability and the knowledge to petition the juvenile court for visitation rights with B.V.K.M. but did not do so.  Appellee notes the probate court acknowledged that had appellant filed for visits with B.V.K.M., the issue could have been addressed.  In addition, appellee argues the no contact order was not permanent and was subject to modification since the order states "until further order of this Court."

{¶ 30} Upon review, the record shows appellant testified he did not seek visits with B.V.K.M. in February 2017, when he sought visits with R.L.L., due to discussions he had with his doctors that he file for visits with one child at a time.

{¶ 31} With respect to the no contact order, we addressed a similar issue in *In re Bryan W.*, 6th Dist. Huron No. H-96-039, 1997 Ohio App. LEXIS 1771 (May 2, 1997).  There, the juvenile court issued an order, in February 1990, barring Bryan's birth mother from "contact or communication, direct or indirect," with Bryan.  *Id.* at *1.  In June 1990, the juvenile court allowed mother one hour a week of supervised visits with Bryan, but in September 1990, the court ordered mother's visits suspended until further order of the court.  *Id.* at *2.  In March 1996, Bryan's grandparents filed with the probate court a petition to adopt him, in which they alleged mother's consent to the adoption was not necessary because she failed, without justifiable cause, to communicate with Bryan for at

10.

least one year prior to the filing of the petition. *Id.* at *2-3. A hearing on the necessity of mother's consent was held, where mother acknowledged she had not communicated with Bryan since August of 1990. *Id.* However, mother argued the juvenile court's no contact order prevented her from having contact with Bryan, so the lack of communication was justifiable. *Id.* The probate court concluded the September 1990 order did not prevent mother from communicating with Bryan. *Id.* at *5. Thus, the court found mother's failure to communicate was not justifiable, and mother's consent to the adoption was not required. *Id.* at *3, 5.

{¶ 32} On appeal, we reversed. *Id.* at *1. We found the juvenile court had never revoked its February 1990 order barring mother's contact with Bryan, and that order did not expire nor was it rendered meaningless by subsequent orders. *Id.* at *6. We therefore concluded the no contact court order was effective and provided justification for mother's failure to contact Bryan. *Id.* at *7.

{¶ 33} Here, we find, in accordance with our holding in *In re Bryan W.*, that the July 13, 2016 judgment entry of the juvenile court suspending appellant's contact with B.V.K.M. until further of the court was in effect and provided justification for appellant's failure to contact B.V.K.M. We further find the probate court's ruling that appellant failed without justifiable cause to provide more than de minimis contact with B.V.K.M. for at least one year immediately preceding the filing of the adoption petition is not supported by competent, credible evidence, and is therefore against the manifest weight of the evidence. Accordingly, appellant's assignment of error is well-taken.

11.

**Appellee's Cross-Assignment of Error**

{¶ 34} Appellee contends the probate court's ruling that appellant was justified in not paying support for B.V.K.M. is against the manifest weight of the evidence. Appellee observes appellant testified he receives Social Security benefits and he had been giving $100 per month to help with the child. Appellee notes those payments stopped in November 2015. Appellee argues appellant's voluntary payments show appellant had the ability to pay money but chose not to continue these payments. Appellee asserts appellant has not provided support or maintenance for over a year, and his consent for the adoption is not required.

{¶ 35} Appellant counters his lack of support of B.V.K.M. was justified because of the juvenile court's zero support order.

{¶ 36} In its judgment entry, the probate court found, based on the stipulations, appellant was subject to a zero dollar support payment pursuant to a court order, which remains in effect. The court set forth "it is well settled law that a birth parent is not obligated to pay child support once a court of competent jurisdiction has issued a zero support order."

{¶ 37} Upon review, we find appellee has met his initial burden of proving appellant failed to provide for the support and maintenance of B.V.K.M. for at least one year immediately preceding the filing of the adoption petition. The record shows the adoption petition was filed on October 6, 2017, and appellant stipulated that he provided no financial support for B.V.K.M. since late 2015.

12.

{¶ 38} As to whether there was justifiable cause for appellant's failure to support B.V.K.M., the probate court found appellant was subject to a zero dollar support order and appellee failed to prove appellant's consent was not required due to appellant's failure to provide maintenance and support.

{¶ 39} In Ohio, the general support statute, R.C. 3103.03, provides that the biological parent of a minor child must support that child. As set forth previously, R.C. 3107.07(A) states that a parent's consent to the adoption of a child is not required if the parent failed without justifiable cause to provide for the maintenance and support of the child as required by law or judicial decree.

{¶ 40} In *In re Jarvis*, 9th Dist. Summit No. 17761, 1996 Ohio App. LEXIS 5569, *12 (Dec. 11, 1996), the court held a judicial decree of child support supersedes R.C. 3103.03, the duty of support which is required by law. The court found the father was not required by law or judicial decree to provide financial support for his child, thus the alleged non-payment of such support was justified and father's consent to the child's adoption was necessary. *Id.* at *15. The majority of Ohio appellate courts have followed this line of reasoning, that if a judicial decree of support exists, the decree supersedes any duty of support required by law. *See In re Adoption of B.I.*, 2017-Ohio-9116, 101 N.E.3d 1171 (1st Dist.) (zero support order is a justifiable excuse for a parent who failed to pay support for a child, thus the consent exception in R.C. 3107.07(A) does not apply); *In re Adoption of A.N.W.*, 7th Dist. Belmont No. 15 BE 0071, 2016-Ohio-463 (a no child support order constitutes justifiable cause for failing to provide support and maintenance)

13.

*In re K.A.H.*, 10th Dist. Franklin No. 14AP-831, 2015-Ohio-1971 (zero support order is a justifiable excuse and consent to adoption is required); *In re Way*, 4th Dist. Washington No. 01CA23, 2002 Ohio App. LEXIS 112 (Jan. 9, 2002) (juvenile court order which relieved parent of child support obligation, as parent had no job and subsisted solely on SSI benefits, provided justification for parent's failure to support child); *In re Adoption of Stephens*, 2d Dist. Montgomery No. 18956, 2001 Ohio App. LEXIS 5777 (Dec. 21, 2001) (an order relieving a parent of child support justifies a parent's failure to pay); and *In re Adoption of Thiel*, 3d Dist. Hardin No. 6-98-12, 1999 Ohio App. LEXIS 950 (Feb. 23, 1999) (court order that no child support is due from a parent is justifiable cause for failing to provide child support).

{¶ 41} We find the approach embraced by the majority of Ohio appellate courts is persuasive. As a result, we conclude if a judicial decree of zero child support exists, the decree supersedes any duty of support required by law under R.C. 3103.03, thus the consent exception in R.C. 3107.07(A) is inapplicable and the parent's consent to the adoption is required.

{¶ 42} Applying this approach to the case under consideration, we find the probate court's finding that appellant's consent to B.V.K.M.'s adoption was required is supported by competent, credible evidence and is not against the manifest weight of the evidence. Accordingly, we find appellee's cross-assignment of error is found not well-taken.

14.

**{¶ 43}** On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Probate Division, is reversed, in part, and affirmed, in part. This matter is remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed, in part,
and affirmed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

Christine E. Mayle, P.J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.