[Cite as *State v. Sanders*, 2020-Ohio-3214.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                         Court of Appeals No. L-19-1192

    Appellee                                          Trial Court No. TRC-19-00742

v.

Samuel David Sanders, Jr.                         **DECISION AND JUDGMENT**

    Appellant                                          Decided:  June 5, 2020

* * * * *

David Toska, Chief Prosecutor, and Jimmie Jones, Assistant
Prosecutor, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Samuel Sanders, appeals the September 9, 2019 judgment of the

Toledo Municipal Court after he was convicted of operating a motor vehicle under the

influence ("OVI").  For the reasons that follow, we affirm the judgment.

{¶ 2} Appellant sets forth two assignments of error:

I. Appellant's conviction for OVI was based on insufficient evidence.

II. Appellant's conviction for driving under the influence of alcohol was against the manifest weight of the evidence.

## Background

{¶ 3} Early in the morning of November 18, 2018, an Ohio State Highway Patrol trooper encountered a pick-up truck, partially off of the road, on the Miami Street exit ramp from Interstate 75 in Toledo, Ohio. The truck's engine was running, a female was in the driver's seat, and a man was outside of the truck. There was also a vehicle parked a short distance away from the truck, in the middle of the road, with flashers on.

{¶ 4} As the trooper exited his patrol car and approached the truck, the female starting walking towards the vehicle with its flashers on. The trooper questioned her and she said she was trying to help appellant get the truck unstuck; she was allowed to leave.

{¶ 5} The trooper then made contact with the man, appellant, and ultimately arrested him. Appellant was charged with OVI in violation of R.C. 4511.19(A)(1)(a), and rules for driving in marked lanes in violation of R.C. 4511.33. Appellant pled not guilty.

{¶ 6} On August 13, 2019, a bench trial was held, and appellant was found not guilty of driving in marked lanes, but guilty of the OVI charge. The court sentenced appellant to 180 days of incarceration, with 177 days suspended, three days in the Driver

2.

Intervention Program and six months of probation. The court suspended appellant's license for one year, but granted him occupational driving privileges. In addition, the court ordered appellant to pay court costs and fines. Appellant timely appealed.

## First Assignment of Error

{¶ 7} Appellant argues the trial court erred in finding him guilty of OVI as the evidence was insufficient to support the verdict. He contends the facts support a finding that a sober female was operating the truck, within the meaning of Ohio law. Appellant asserts the court should find there was no OVI, because the driver of the truck was sober, and there was conflicting evidence as to whether appellant was ever in control of the truck.

## Law

{¶ 8} R.C. 4511.19(A)(1)(a) states "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol * * *." And, "'[o]perate' means to cause or have caused movement of a vehicle * * *." R.C. 4511.01(HHH).

{¶ 9} "A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317, ¶ 28, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). During a sufficiency of the evidence review, an appellate court's function is to "examine the evidence admitted at trial to determine whether such

3.

evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**Trial Transcript**

{¶ 10} At the bench trial, the state called one witness, the trooper, and appellant testified in his own defense. The testimony relevant to appellant's appeal is summarized below.

{¶ 11} The trooper testified that on November 18, 2018, at 3:37 a.m., he was working traffic enforcement, when he came upon a truck which had slid off of the road of the exit ramp, in the vicinity of the casino. The trooper stopped his patrol car to assess the situation, and observed the truck's engine was running, a female was in the driver's seat and a man, appellant, was outside of the truck, attempting to push the truck out of the ditch. There was also a vehicle parked a short distance up the road, in the middle of the road, with its four-way flashers on.

{¶ 12} The trooper exited his patrol car and approached the truck, at which time the female starting walking away, towards the vehicle with the flashers on. He asked her to stop and he questioned her. The female said appellant got his truck stuck in the mud, and she was trying to help appellant get the truck unstuck. The trooper did a "quick little test, on her, to make sure she was good to go." After the female said appellant was

4.

driving and it was determined she "was good to go," she was cleared to leave. The female got into the vehicle that had its flashers on and drove away.

{¶ 13} The trooper then made contact with appellant, who offered two different stories about how the truck slid off of the road. One version was a car ran the truck off of the road, when the car "crossed off Miami Street onto the exit ramp." This confused the trooper because that car would have been disabled from the big curb it would have hit. The trooper kind of challenged appellant's version, so his story changed, and he said he had to slow down and swerve to avoid another car. At no point did appellant say he was not driving or that he was a passenger.

{¶ 14} The trooper did "a quick test, on his eyes, just to see how his eyes would react to my finger just going back and forth," and appellant's eyes did not roll smoothly, they jumped a little. This warranted further evaluation, so the trooper brought appellant to the patrol car, and detected the odor of alcohol on appellant's person. The trooper performed field sobriety tests on appellant, including the HGN (horizontal gaze nystagmus) test, where there were "four clues out of six" and the walk and turn test, where appellant started prior to being told, he did not touch heel-to-toe and he had a slight stumble. Appellant failed these tests. Appellant was also given the one-leg stand test, which he passed. The trooper arrested appellant. Although appellant was offered a portable breath test and a breathalyzer test at the jail, he refused both.

{¶ 15} The trooper recalled appellant was not the owner of the truck. When asked whose vehicle was towed that day, the trooper testified "[i]n my statement, I indicate that

5.

he [appellant] tells me it's the child's -- it's the mother of his child's vehicle. And he mentioned his tools were inside the vehicle."

{¶ 16} Appellant testified to the following. He was with a group of seven people, in two cars, on the day in question. His "cousin was driving the car in front." Appellant was not driving the truck as he "never drove at all." He said "we were getting off going to Hollywood Casino. And my cousin she ended up driving -- driving too fast, and kind of swerved off, and was going in a circle. And the car in front of us was my cousin. And they told her they was so scared. We didn't know what was going on." Appellant said "[t]he car in front of us was my cousin and them." After the truck spun out, it was in a ditch. "She got caught in a ditch, and I tried to push her out of there. And then when she was getting pushed out, I seen the highway patrol coming up. Which I was trying to push it out and he came up. And the door -- the one door -- the driver door was broke. So she ended up -- we -- we had to get her out of there or whatever. He gave her like a little eye test or whatever, and he sent her on her way."

{¶ 17} Appellant testified "I kind of told him [the trooper], in the beginning, I wasn't even driving. And then I told him the story. * * * * And I specifically told him I never drove, and I never -- I never drove. I didn't drive at all." Appellant said the truck was "her cousin -- her people's. Rica. (ph)"

{¶ 18} On cross-examination, appellant said his group was going to the casino at 3:30 in the morning but he was not coming from a party. He said he "was at home, and then it was my cousin -- it was my cousin [sic] birthday. And she said * * * I owe her

6.

some money or whatever. Can I take her to the casino or whatever. So we were going to the casino, yes." As to the vehicles, appellant testified he was pushing his cousin's friend's car and he did not know who owned the other vehicle. He said Moo-Moo was driving the car and "I never even touched the car. When she spunned out, I walked around. And we seen the state trooper coming up. I didn't even attempt to try and push it." Appellant again reiterated "I never touched nothing. Not the key. Never drove nothing. I didn't drive."

## Analysis

{¶ 19} A review of the record and the relevant law shows there was substantial evidence offered to establish that appellant had operated the truck in the early morning hours of November 18, 2018, while under the influence. The trooper testified both the female and appellant implied that appellant was driving the truck when it went into the ditch, and appellant never said he was not driving the truck. After viewing this evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of OVI were proven beyond a reasonable doubt. Therefore, we find there was sufficient evidence to support appellant's OVI conviction. Accordingly, appellant's first assignment of error is not well-taken.

## Second Assignment of Error

{¶ 20} Appellant asserts his OVI conviction was against the manifest weight of the evidence. He maintains the burden is on the state to prove the elements of OVI, and there was no OVI as the facts are that "an unnamed sober female was observed to be driving

7.

the vehicle which the trooper observed to be stuck in the ditch. The vehicle was running, the key was in the ignition, and she was in the driver's seat." Appellant contends the officer turned his attention to appellant, who was outside of the vehicle, denied driving and "gave an explanation for the circumstance of the vehicle which was consistent with the second vehicle of the party being stopped in the middle of the road with its flashers on." Appellant argues, "there was no inquiry into the role of the second vehicle in the first ending up in the ditch."

**Law**

{¶ 21} The standard of review for manifest weight is the same in a criminal case as in a civil case, and an appellate court's function is to determine whether the greater amount of credible evidence supports the verdict. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; *Thompkins* at 387. "A manifest weight of the evidence challenge contests the believability of the evidence presented." (Citation omitted.) *State v. Wynder*, 11th Dist. Ashtabula No. 2001-A-0063, 2003-Ohio-5978, ¶ 23. In deciding whether a conviction is against the manifest weight, the appellate court must review the record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387.

8.

**Analysis**

{¶ 22} After reviewing the record, weighing inferences, and examining the credibility of the trooper and appellant, we find the greater amount of credible evidence supports the verdict. In resolving the conflicts in the evidence, as to whether appellant had operated the truck while under the influence, we find the trier of fact did not lose its way, nor did the trier of fact create a manifest miscarriage of justice. Thus, we find appellant's OVI conviction was not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is not well-taken.

**Conclusion**

{¶ 23} On consideration whereof, the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

Christine E. Mayle, J. _____

Gene A. Zmuda, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.