[Cite as *In re Adoption of B.I.*, 2017-Ohio-9116.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: ADOPTION OF B.I. | : | APPEAL NOS. C-170064 |
| | | C-170080 |
| | : | TRIAL NO. 2016000515 |
| | : | |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Court of Common Pleas, Probate Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 20, 2017

*Lindhorst & Dreidame Co., LPA,* and *Bradley D. McPeek,* for Appellant,

*Susan Mineer* for Appellee.

**DETERS, Judge.**

{¶1} These appeals relate to an adoption proceeding initiated by the stepfather of a minor child in which the probate court determined that the natural father's consent to the adoption was required, and therefore the court dismissed the adoption petition. The question presented to this court is whether the natural father failed without justifiable cause to provide maintenance and support as required by law or judicial decree, where the father had a zero child-support order. Because we determine that, under the plain language of R.C. 3107.07(A), a parent cannot fail without justifiable cause to provide maintenance and support of a minor as required by law or judicial decree when that parent has a zero child-support order, we affirm the judgment of the trial court.

{¶2} In February 2016, appellant stepfather filed a petition to adopt his stepson, B.I., with the consent of B.I.'s mother ("mother"). The petition alleged that the consent of B.I.'s birth father ("father") was not required under R.C. 3107.07(A), because father had failed without justifiable cause to provide maintenance and support of B.I. as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition (the "one-year period").

{¶3} Father filed objections to the petition. Prior to a hearing on the issue of whether father's consent to the adoption was required, the parties stipulated to several facts, including that (1) father had been in prison since 2009; (2) in August 2010, the Clermont County Juvenile Court had set father's child-support obligation at zero and had also set his arrearage to zero; (3) during the one-year period, father had received $18 per month as prison income, and friends and family had deposited

2

$5,152 into his prison account; and (4) during the one-year period, father had spent $4,681.62 at the prison commissary.

{¶4}  At the hearing before the magistrate on the issue of father's consent, mother testified that father, along with father's mother, had requested repeatedly that mother terminate father's child-support order, otherwise, father would be incarcerated again on child-support arrearages upon release from prison.  Because of their requests, mother agreed to an order that set father's support obligation at zero and set his arrearage at zero.  Mother testified that she had not had any communication with father during the year prior to the filing of the adoption petition, but that she would have accepted money from father for B.I.'s support if father had offered.

{¶5}  Father participated in the consent hearing by phone.  Father testified that he had spent over $4,000 in the prison commissary because he did not like the food served at the prison mess hall.  He never attempted to provide maintenance or support for B.I. while in prison and never inquired regarding B.I.'s financial support.  However, father testified that mother had never requested any support.

{¶6}  After the consent hearing, the magistrate determined that even though father did not have a support obligation by judicial decree, as a parent, he still had the obligation to provide maintenance and support.  Because the uncontroverted evidence showed that father did not provide any maintenance or support for B.I. during the one-year period, and that father had thousands of dollars available to him in his prison account, father's consent was not required for the adoption petition.

{¶7}  Father filed objections to the magistrate's decision, arguing mainly that the zero child-support order excused any legal obligation to provide

3

maintenance and support to B.I. The trial court sustained father's objections, overruled the decision of the magistrate, and dismissed stepfather's adoption petition. Stepfather now appeals, raising in one assignment of error that the trial court erred in dismissing his adoption petition.

{¶8} In general, an adoption petition may be granted only if written consent to the adoption has been executed by the minor's natural parents. *See* R.C. 3107.06. However, parental consent to an adoption is not required when the petitioner alleges, and the court finds, by clear and convincing evidence, that the parent "has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition * * *." R.C. 3107.07(A). The probate court determines justifiable cause "by weighing the evidence of the natural parent's circumstances for the statutory period for which he or she failed to provide support." *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph three of the syllabus.

{¶9} As it pertains to the natural parent's failure to provide maintenance and support, the petitioner requesting adoption carries the burden to prove by clear and convincing evidence "both (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that this failure was without justifiable cause." *Id.* at paragraph one of the syllabus. Once the petitioner has met his or her initial burden, "the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure." *Id.* at paragraph two of the syllabus. Because the burden of proof ultimately remains with the adoption petitioner, once a natural parent has "presented facially justifiable

4

reasons" for his or her failure to support the child, the burden shifts back to the petitioner to show that the natural parent's justifications are illusory. *In re Adoption of B.B.S.*, 2016-Ohio-3515, 70 N.E.3d 1, ¶ 22 (4th Dist.), citing *In re Adoption of Kessler*, 87 Ohio App.3d 317, 324, 622 N.E.2d 354 (6th Dist.1993).

{¶10} R.C. 3107.07(A) does not contain definitions for its terms, thus, courts give those terms their plain and ordinary meanings. *In re E.W.H.*, 4th Dist. Meigs No. 16CA8, 2016-Ohio-7849, ¶ 32-33. Maintenance is defined as "[f]inancial support given by one person to another[,]" and support as "[s]ustenance or maintenance; esp., articles such as food and clothing that allow one to live in the degree of comfort to which one is accustomed." *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 20, citing *Black's Law Dictionary* 1039 (9th Ed.2009). "Justifiable" means "[c]apable of being legally or morally justified; excusable; defensible." *In re E.W.H.* at ¶ 33, citing *Black's Law Dictionary* 882 (8th Ed.2004).

{¶11} Stepfather first argues that a zero child-support order does not excuse a parent's failure to support because R.C. 3107.07(A) refers to maintenance and support "required by law <u>or</u> judicial decree." (Emphasis added.) Thus, according to stepfather, father had a duty to support his son, separate and apart from the zero child-support order. Stepfather also argues that the probate court failed to consider all of the facts and circumstances in its decision, including the fact of father's incarceration as the underlying basis for the zero child-support order.

{¶12} To support the argument that a duty to support a minor child exists separate from a child-support order, stepfather cites two cases from the Fifth Appellate District, *In re Adoption of A.S.*, 5th Dist. Licking No. 10-CA-140, 2011-Ohio-1505, and *In re Adoption of Z.A.*, 5th Dist. Licking No. 16-CA-05, 2016-Ohio-

3159.  In *In re Adoption of A.S.*, the natural father was incarcerated and had a zero child-support order, and the trial court granted the stepfather's adoption petition. The father appealed.  The appellate court determined that the phrase "required by law or judicial decree" in R.C. 3107.07(A) means that the father has a support obligation by judicial decree, but also a statutory duty to support his minor child. According to the appellate court, this statutory duty arises under R.C. 2919.21, a criminal statute, which criminalizes parents' nonsupport of children.

{¶13}  Because the father had a separate duty to provide support to his child, the court in *In re Adoption of A.S.* determined that, despite the zero child-support order, the father had failed without justifiable cause to support his child.  *In re Adoption of A.S.* at ¶ 29.  The Fifth Appellate District followed its reasoning in *In re Adoption of A.S.* in *In re Adoption of Z.A.*, another case dealing with an incarcerated father where the father did not have a child-support order in place.

{¶14}  Other appellate courts have taken a different approach to the language of R.C. 3107.07(A).  The Ninth Appellate District has applied the phrase "required by law or judicial decree" in R.C. 3107.07(A) to mean that if a judicial decree of support exists, then the decree supersedes any duty of support "required by law."  *See In re Adoption of Jarvis*, 9th Dist. Summit No. 17761, 1996 WL 724748 (Dec. 11, 1996).  In *Jarvis*, the stepfather's adoption petition had been dismissed after the natural father refused to consent.  The stepfather appealed, and on appeal he argued that the father's consent was not required, because the father had failed to provide maintenance and support without justifiable cause. The stepfather argued that even though the divorce decree between the father and mother did not contain a child-support order for the father, the lack of an order in that decree did not abrogate the

father's duty of support under R.C. 3103.03 to "support his or her minor children out of his or her property or by his or her labor." Therefore, the stepfather argued that the father was "required by law" to provide support. The Ninth District disagreed with the stepfather, reasoning that, in divorce cases, the common-law duty of support owed by parents to their children, as codified in R.C. 3103.03, is superseded by the domestic-relations statute governing child support, R.C. 3109.05. *Id.*, citing *Meyer v. Meyer*, 17 Ohio St.3d 222, 224, 478 N.E.2d 806 (1985). Therefore, the Ninth District held that "[t]o additionally compel the application of R.C. 3103.03 when there is already a valid judicial order in existence would be to incorrectly interpret R.C. 3107.07 to mean: 'as required by law in addition to a judicial decree where a domestic relations court has determined that child support should be not set.'" *Id.* at *5. Therefore, the Ninth District affirmed the dismissal of the stepfather's adoption petition.

{¶15} The Second Appellate District has followed *Jarvis* in holding that a judicial order relieving a parent of the duty to support supersedes a statutory or common-law duty to support in adoption cases. *See In re Adoption of Stephens*, 2d Dist. Montgomery No. 18956, 2001 WL 1636284, *3 (Dec. 21, 2001); *In re Adoption of W.K.M.*, 166 Ohio App.3d 684, 2006-Ohio-2326, 852 N.E.2d 1264 (2d Dist.) (applying the same reasoning in a case involving an incarcerated natural father with a zero child-support order). As have the Fourth, Seventh, and Tenth Appellate Districts. *See In re Adoption of Way*, 4th Dist. Washington No. 01CA23, 2002-Ohio-117; *In re Adoption of A.N.W. and L.D.W.*, 7th Dist. Belmont No. 15 BE 0071, 2016-Ohio-463; *In re Adoption of K.A.H.*, 10th Dist. Franklin No. 14AP-831, 2015-Ohio-1971, ¶ 23. Without discussing *Jarvis*, the Third Appellate District seemed to reach

the same result, determining that where a natural mother had a zero child-support order, the mother's failure to support her minor child actually "fulfilled her obligations under the judicial decree," and therefore the mother's consent to the adoption was necessary. *See In re Adoption of Thiel*, 3d Dist. Hardin No. 6-98-12, 1999 WL 152902, *2 (Feb. 23, 1999); *In re Adoption of Collene*, 3d Dist. Crawford No. 3-08-08, 2008-Ohio-5827.

{¶16} The Fourth Appellate District has distinguished its holding that a zero child-support order supersedes a statutory or common-law duty to support in adoption cases. *See In re Adoption of L.C.H. and K.S.C.*, 4th Dist. Scioto Nos. 09CA3318, 09CA3319 and 09CA3324, 2010-Ohio-643. In *In re Adoption of L.C.H. and K.S.C.*, the mother had been in and out of prison for drug issues. The juvenile court had ordered the mother to pay zero dollars in child support to her husband. The month after the court entered the zero child-support order, the mother started working at an insurance agency. During the adoption proceedings of the mother's children, the mother argued that the zero child-support order superseded her common-law duty to support her children. The Fourth Appellate District disagreed. First, the appellate court noted that the zero child-support order named the mother's husband as the obligee, even though he did not have custody of the mother's children at the time. Second, the mother had a change in circumstances less than one month after the support order had been entered. The appellate court determined that these facts made the appeal distinguishable from its earlier decision in *Way* that a zero child-support order supersedes the common-law duty to support. Therefore, the appellate court held that the mother had a common-law duty to support her children despite the zero child-support order. *Id.* at ¶ 51.

{¶17} The reasoning of the Fourth Appellate District in *In re Adoption of L.C.H. and K.S.C.* is similar to the reasoning of the Fifth Appellate District in *In re Adoption of A.S.* and *In re Adoption of Z.A.* in that these courts have determined that a parent has a statutory duty to provide child support, despite the fact that the parent has a court order of support in place. The reasoning in these cases is problematic. First, these cases do not discuss *Meyer v. Meyer*, in which the Ohio Supreme Court held that in domestic-relations cases the general duty of support under R.C. 3103.03 is superseded by R.C. 3109.05, the domestic-relations statute governing child support. *Meyer*, 17 Ohio St.3d at 224, 478 N.E.2d 806. More importantly, by determining that a parent's duty to support is not necessarily superseded by a court order regarding child support, the cases suggest that an obligor parent cannot rely on a valid court order of child support. If a child-support order should be modified based upon a change of circumstances, then the parties must be required to return to the juvenile or domestic-relations court that issued the order, and should not collaterally attack the child-support order in probate court in an adoption proceeding. *See Cincinnati Bar Assn. v. Hauck*, 148 Ohio St.3d 203, 2016-Ohio-7826, 69 N.E.3d 719, ¶ 28 ("Unless a judgment was issued without jurisdiction or was procured by fraud, it is considered valid, and even though it may be flawed in its resolution of the merits, its integrity is generally not subject to collateral attack in a separate judicial proceeding.").

{¶18} Adoption proceedings terminate fundamental rights of natural parents, thus the consent requirement in R.C. 3107.07(A) must be strictly construed to protect natural parents. *In re Adoption of G.V.*, 126 Ohio St.3d 249, 2010-Ohio-3349, 933 N.E.2d 245, ¶ 6. Under the plain language of R.C. 3107.07(A), the

justifiable-cause determination is not made until after the probate court finds that the parent failed to provide maintenance and support for the one-year period. *See In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, at ¶ 23 ("In applying [R.C. 3107.07(A)], a probate court undertakes a two-step analysis. First, to determine if a parent made a financial contribution that comports with the requirements of R.C. 3107.07(A) to contribute maintenance and support and second, if it finds a failure of support, then to determine whether justifiable cause for the failure has been proved by clear and convincing evidence."). A parent does not fail to provide maintenance and support as required by law or judicial decree where the parent has a zero child-support order, and, in fact, the parent complies with his or her court-ordered child-support obligation in not providing for his or her child. At that point, the analysis under R.C. 3107.07(A) ends.

{¶19} Therefore, we reject stepfather's argument in this case that the language "required by law or judicial decree" in R.C. 3107.07(A) means that a parent still has a duty to provide child support separate from a judicial decree of support. We follow the approach taken by a majority of appellate courts and hold that in adoption-consent cases under R.C. 3107.07(A), where a court has ordered a parent to pay no child support or zero child support, that court order of support supersedes any other duty of support "required by law," and therefore the parent cannot fail without justifiable cause to provide maintenance and support of a minor child.

{¶20} We note that applying R.C. 3107.07(A) to cases where a natural parent has a zero child-support order may produce unjust results, especially where the zero child-support order is the result of the natural parent's criminal misconduct. For example, in *Frymier v. Crampton*, 5th Dist. Licking No. 02 CA 8, 2002-Ohio-3591,

10

the natural father had committed attempted aggravated murder by shooting his father-in-law with a firearm, and the incident took place in the presence of the father's wife and their four-year-old son. The mother obtained a divorce and the final decree prohibited contact between the father and his son. The decree also relieved the father from his child-support obligation while in prison, but the obligation accumulated as an arrearage. The mother remarried and the stepfather filed an adoption petition, alleging that the father's consent was not required. The trial court granted the adoption petition, and the father appealed. On appeal, the father argued that the court's order relieving his support obligation superseded his general duty to support his son. The appellate court recognized the important interest of a nonconsenting parent in an adoption proceeding terminating parental rights, nevertheless, the court reasoned that "justice requires that we not ignore the reason [father] was put into his current position." *Id.* at *2. The appellate court determined that the father's violent acts caused the subsequent lack of support, and that the father had an income-producing job in prison. Therefore, under the facts and circumstances of that case, the appellate court affirmed the trial court's holding.

{¶21} The result in *Frymier* is not based upon the plain language of R.C. 3107.07(A), but instead upon the court's determination that justice required disposing of the father's consent because of the father's criminal misconduct. Although justice may have been better served by the result reached in *Frymier*, R.C. 3107.07(A) makes no exception to parental consent in an adoption proceeding because of a parent's criminal misconduct. The role of the courts is to apply the law as written, thus, we must adhere to the plain language of R.C. 3107.07(A). *See Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d

11

420, ¶ 21 ("A fundamental principle of the constitutional separation of powers among the three branches of government is that the legislative branch is "the ultimate arbiter of public policy."") (Internal quotes omitted.)

{¶22} In this case, the undisputed evidence shows that father had a zero child-support order for the one-year period. Both mother and father have referred to the 2010 child-support order as a zero child-support order. *See* appellant's brief at 4; appellee's brief at 2-3, 14. Even though both parties and the trial court agree as to the characteristics of the 2010 support order, the dissent sees it differently. The dissent makes an argument that neither party made to the trial court, or in either their briefs or at oral argument to this court. The dissent argues that the 2010 order terminating father's support obligation is not a zero child-support order, but instead the order should be treated as if "no order exists." The dissent cites no law for this argument. To be clear, the absence of a child-support order is treated differently under R.C. 3107.07(A). *See, e.g., In re Adoption of Kuhlmann*, 99 Ohio App.3d 44, 649 N.E.2d 1279 (1st Dist.1994) (analyzing R.C. 3017.07(A) in the absence of a court order addressing child support). As stated succinctly by another appellate court: "[A] zero support or no support order differs from the absence of a support order. When a court is silent on support or has not entered an order regarding support, that fact alone does not constitute justifiable cause for failing to provide support and maintenance." *In re Adoption of A.N.W. and L.D.W.*, 7th Dist. Belmont No. 15 BE 0071, 2016-Ohio-463, ¶ 30 (citing a line of cases under R.C. 3107.07(A) where child support had not been adjudicated). Because this is not a case where a court is silent on support or where support has not yet been adjudicated, this line of case law was not cited by the parties and does not apply.

{¶23} Moreover, based upon the language in this opinion, the dissent creates a hypothetical situation where a father who commits crimes against his child, and goes to prison for those crimes, must later consent to that child's adoption. It is worth noting that this hypothetical situation is factually distinguishable and would likely turn out differently than predicted by the dissent, albeit under the de-minimis contact provision of R.C. 3107.07(A). *See In re Adoption of N.T.R.*, 10th Dist. Franklin No. 16AP-589, 2017-Ohio-265 (where the father had raped his stepdaughter and the Ohio Department of Rehabilitation and Correction had ordered that the father not contact his daughter because his daughter lived with his stepdaughter, the victim, and the appellate court determined that the father had failed to have more than de minimis contact with his daughter, and that this failure was without justifiable cause).

{¶24} Therefore, stepfather did not meet his burden to show by clear and convincing evidence that father failed without justifiable cause to provide maintenance and support to B.I. as required by law or judicial decree. We overrule stepfather's assignment of error, and we affirm the judgment of the probate court dismissing stepfather's adoption petition.

Judgment affirmed.

MOCK, P.J., concurs.
MILLER, J., dissents.

MILLER, J., dissenting.

{¶25} Let's say an ex-husband who had long been derelict in making child-support payments commits crimes against his ex-wife and child. He is sent to prison.

13

The mother decides she wants the father released from prior obligations under a child-support order because she and her child want to sever all ties. The juvenile court accommodates this request and rescinds the order. She later seeks to have the child adopted by her new spouse. According to the majority, the probate court has no discretion in this instance. The child may not be adopted under R.C. 3107.07(A) without the consent of the ex-husband. Same goes for any other louse who a custodial parent has decided not to be financially tied to and thus consented to there not being a support order. Could this be the intent of the consent provisions in R.C. 3107.07(A)? Is such a result mandated by the text? I conclude it is not, and thus respectfully dissent.

{¶26} The majority refers to a "zero child-support order." In the mind's eye, that would be a court order affirmatively stating the father is required to pay zero dollars. That is not what exists here. Here, there had been a support order in place, on which father was not paying. Father's relatives convinced mother to release him from the order so that the accumulating arrearage would not be problematic for father upon his release. The juvenile court terminated the order, but did not put on a "zero child-support order." Instead, no order exists.

{¶27} Thus, I find troubling the majority's conclusion that the absence of a child-support order is dispositive. Providing no support where there is no support order in place isn't an automatic pass on the "maintenance and support" portion of R.C. 3107.07(A). Instead, it factors into whether the failure to provide maintenance and support was "without justifiable cause."

{¶28} The statute affords the probate court discretion to weigh the circumstances around which a parent has failed to provide support. Perhaps a parent was not ordered to provide support because the custodial parent was wealthy, or the

14

noncustodial parent is justifiably incomeless and unable to provide support, or maybe one parent is a person the custodial parent is trying to avoid for a host of reasons and therefore wants no order in place. The probate court should be able to consider such matters before making a determination under R.C. 3107.07(A).

{¶29} Accordingly, I would vacate the judgment and remand for the probate court to decide whether the failure to provide support was justified. When it does so, the probate court would be free to consider the redirection of the support obligations and the reasons therefor when making its determination.

Please note:

The court has recorded its own entry on the date of the release of this opinion.