[Cite as *In re Adoption of D.W.D.-H.*, 2023-Ohio-1999.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

IN THE MATTER OF: :
THE ADOPTION OF D.W.D.-H. :
:            C.A. No. 2023-CA-8
:
:            Trial Court Case No. 20225041
:
:            (Appeal from Common Pleas Court-
:            Probate Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on June 16, 2023

. . . . . . . . . . .

REGINA ROSEMARY RICHARDS, Attorney for Appellant

MARY ADELINE R. LEWIS, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Petitioner M.H. appeals from the trial court's decision and judgment entry denying his petition to adopt his minor stepchild.

{¶ 2} The trial court held that the petitioner could not adopt without the consent of the child's biological father, the respondent, who withheld consent. In finding consent necessary, the trial court concluded that the respondent had failed to have more than de

minimis contact with the child and had failed to provide maintenance and support for at least one-year period immediately preceding the adoption petition. The trial court nevertheless found consent necessary because the respondent had justifiable cause for these shortcomings.

{¶ 3} The petitioner argues that the trial court's justifiable-cause findings were against the manifest weight of the evidence and that they constituted an abuse of discretion. He also argues that the trial court committed plain error in not granting his petition where it was in the best interest of the child and the respondent lacked justifiable cause for not contacting or supporting the child.

{¶ 4} We hold that the trial court's justifiable-cause finding regarding the respondent's not providing maintenance and support for his child was against the manifest weight of the evidence. In light of this holding, the respondent's consent to adoption is not required.

{¶ 5} The trial court's judgment will be reversed, and the case will be remanded for the trial court to decide whether adoption is in the child's best interest.

## I. Background

{¶ 6} The minor at issue was born in 2016 during a relationship between respondent Father and the child's Mother. The relationship ended in the summer of 2018. Mother subsequently obtained a civil-protection order against Father, and Father filed for legal custody of the child. Father's custody action was dismissed after he became incarcerated in connection with multiple protection-order violations.

{¶ 7} Although Father did not obtain custody, he participated in supervised

visitation with the child when not incarcerated. Eleven such visits occurred between February and June 2019. Father then began weekly visits with the child at his own mother's house. Those visits transitioned into virtual visits during the COVID pandemic in 2020.

{¶ 8} Thereafter, in January 2021, Father was convicted of felony operating a vehicle while under the influence of alcohol (OVI). The conviction resulted in revocation of his community control for one of his protection-order violations. As a result of the OVI conviction and the community-control revocation, Father went to prison from February 2021 through mid-June 2022. He then was transferred to a half-way house, where he remained until his release in mid-October 2022.

{¶ 9} Petitioner Stepfather married the minor child's Mother in June 2021. One year and one day after their marriage, Stepfather petitioned to adopt the child. Although Father did not consent, the petition alleged that his consent was unnecessary under R.C. 3107.07(A). Specifically, the petition alleged that Father had failed without justifiable cause to have more than de minimis contact with the child or to provide for the child's maintenance and support as required by law or a judicial decree for at least one year immediately preceding the petition's filing.

{¶ 10} The trial court held a multi-day hearing on Stepfather's petition in December 2022 and January 2023. The hearing addressed the need for Father's consent and whether adoption was in the child's best interest. Witnesses included Father, Mother, Stepfather, Father's own mother, and Father's adult daughter. Based on the evidence presented, the trial court found that Father had failed to have contact with or to provide

maintenance and support for his minor child during the one-year period of June 17, 2021 to June 17, 2022. After reviewing the testimony, however, the trial court found justifiable cause for Father's failure to contact or to provide for his child. The trial court found that Father's incarceration throughout the one-year period was a relevant consideration as to contact and maintenance and support. With regard to contact, the trial court reasoned:

> This Court also considers that [Father] did pursue his visitation opportunities with the child and did indeed seek a legal court order to enforce his rights to visitation. The Court also notes that in March of 2020, [Mother] did secure a civil protection order against [Father] from having any contact with her whatsoever. Additionally, she took steps to block [Father] from being able to get any text messages to her for the benefit of the child. As [Mother] was the sole custodian of the child, all attempts to contact the child would have to go through her. Consequently, [Mother] effectively eliminated [Father's] sole means to contact his child.

> This notwithstanding, the Court received testimony that [Father] tried to contact his child by way of his mother—who made several trips on [Father's] behalf to try and contact the child. [Father] had sent two birthday cards and one Christmas card in this manner. Unfortunately, these attempts did not go well and the Petitioner directed [Father's] mother not to return to their residence but to seek visitation through said Larry Alexander Center. [Father's] mother took no further initiatives.

> In review, it is clear that [Father] had no contact with his child during

the applicable one year period of time. However, [Father] was incarcerated during the entire applicable period. He had tried to utilize the courts in seeking visitation with his child to no avail as he was incarcerated on that occasion. He was ordered not to have contact with the mother of his child—his sole avenue to have contact with the child—by way of a protection order. And even if he had chosen to violate the court order and to contact [Mother] by her phone, he was blocked, technologically speaking, from doing so. Under all of these circumstances, the Court does find that [Father's] failure to have contact with his child was justifiably excusable.

January 23, 2023 Decision and Entry at 4-5.

{¶ 11} With regard to the issue of maintenance and support, the trial court reasoned:

The Court now considers the issue concerning the provision of maintenance and support for the child. The parties presented much less testimony on this particular issue. [Mother] claims that the last financial assistance from [Father] was in 2018. Nevertheless, [Mother] concedes that [Father] provided food, diapers, and clothing for the child. She also testified that [Father] had given her a debit card to use for the care of the child. She claims that she did not utilize the card as she did not trust [Father].

[Father] testified that even though he was incarcerated, that he directed his mother to take gifts to [Mother] for the benefit of the child. This testimony was not disputed by the Petitioner. The Court also notes here that

for the first twenty-five months of the child's life, that [Father] did provide for the child as he was gainfully employed as a roofing contractor. Clearly, this occupation was put on hold during the time of [Father's] incarceration.

Again, [Father] was incarcerated during the entire applicable one year period of time. He did make certain overtures for the care of his child, including the provision of a debit card and the provision of various gifts for the child. Further, it remains unclear to this Court why [Mother] did not seek a court order of support from [Father]. This fact seems to have clouded both parties' understanding that maintenance and support of the child still was required under common law. Both parties seem to have assumed that formal support payments were not expected, as they were not demanded. This notwithstanding, the Court finds here that [Father's] failure to provide for the maintenance and support of the child during the applicable one year period of time was justifiably excusable.

*Id.* at 5-6.

{¶ 12} Finally, the trial court declined to decide whether adoption was in the child's best interest. Given that Father's lack of consent precluded Stepfather from adopting, the trial court found no need to resolve the best-interest issue. *Id.* at 6-7.

## II. Analysis

{¶ 13} Stepfather's first two assignments of error challenge the trial court's finding of justifiable cause for Father's failure to contact his child and failure to provide maintenance and support. In the first assignment of error, Stepfather contends the manifest weight of the evidence did not support a justifiable-cause finding based on

Father's being in prison during the relevant one-year period where Father stopped providing maintenance and support in 2018 or 2019, ceased contact with the child in November 2020, and did not begin his prison term until February 2021. In the second assignment of error, Stepfather makes essentially the same arguments under an abuse-of-discretion standard. Finally, in his third assignment of error, Stepfather claims the trial court committed plain error by not finalizing the adoption where it found adoption to be in the child's best interest.

## A. Justifiable Cause

{¶ 14} We begin our analysis with a review of the law governing Stepfather's first two assignments of error. Under R.C. 3107.06, a biological parent ordinarily must consent before a court may grant an adoption petition. Exceptions are found in R.C. 3107.07(A), which provides that consent is not required when a court finds by clear and convincing evidence that the parent has failed, without justifiable cause, to have more than de minimis contact with the child or to provide maintenance and support for the child for at least the one-year period immediately preceding the adoption petition.

{¶ 15} The party petitioning for adoption has the burden to prove by clear and convincing evidence that one of the two consent exceptions applies. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985), paragraph four of the syllabus. Clear and convincing evidence is that which produces "in the mind of the trier of fact[ ] a firm belief or conviction as to the facts sought to be established.' " *Id.* at 368, citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Once the petitioner has established by clear and convincing evidence that the biological

parent has failed to have more than de minimis contact or has failed to provide support for the child within at least the one year immediately preceding the petition filing date, the burden of going forward with evidence shifts to the biological parent to show some facially justifiable cause for the failure. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph two of the syllabus. The burden of proof, however, remains at all times with the petitioner, who must prove the lack of justifiable cause by clear and convincing evidence. *Id.*; *see also Holcomb* at 368 ("No burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable.").

{¶ 16} The phrase "justifiable cause" is not defined in R.C. 3107.07. However, it has been defined as meaning "[c]apable of being legally or morally justified; excusable; defensible." (Citations omitted.) *In re Adoption of B.I.*, 2017-Ohio-9116, 101 N.E.3d 1171, ¶ 10 (1st Dist.), *aff'd*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28. The Ohio Supreme Court has "refused to adopt a 'precise and inflexible meaning' for 'justifiable cause,' but instead has concluded that 'the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists.' " *In the Matter of Adoption of D.D.G.*, 2d Dist. Montgomery No. 27741, 2018-Ohio-35, ¶ 5, quoting *In re Adoption of W.K.S.*, 2d Dist. Champaign No. 2014-CA-16, ¶ 22, citing *Holcomb* at 367. An important consideration regarding justifiable cause is a parent's willingness and ability to contact or support a child. *In re Adoption of J.R.I.*, 2023-Ohio-475, 209 N.E.3d 93, ¶ 38 (2d Dist.), citing *In re Adoption of Masa*, 23 Ohio St.3d 163,166, 492 N.E.2d 140 (1986).

{¶ 17} Whether a biological parent has failed to have more than de minimis contact

with or has failed to provide maintenance and support for a child involves a trial court's resolution of questions of fact and is subject to abuse-of-discretion review. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 21. A trial court's justifiable-cause determination regarding a biological parent's failure to do these things will not be disturbed unless that determination is against the manifest weight of the evidence. *Id.* at ¶ 24, quoting *Masa*, paragraph two of the syllabus. This standard requires us to weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the court clearly lost its way and created a manifest miscarriage of justice. *In re Adoption of J.L.*, 1st Dist. Hamilton No. C-180453, 2019-Ohio-366, ¶ 25.

{¶ 18} With the foregoing standards in mind, we turn to Stepfather's first two assignments of error. As noted above, they both address the trial court's finding of justifiable cause for Father's failure to have more than de minimis contact with his child and failure to provide maintenance and support for the child. The first assignment of error challenges the trial court's justifiable-cause finding under a manifest-weight-of-the-evidence standard. The second assignment of error raises the same issue under an abuse-of-discretion standard. Given that both assignments of error address the trial court's justifiable-cause determination, we conclude that the manifest-weight standard is the correct one to apply. *In re Adoption of M.B.* at ¶ 24; *see also In re F.D.H.*, 2023-Ohio-730, __ N.E.3d __ (2d Dist.), ¶ 8 ("The question of whether justifiable cause has been proven will not be disturbed on appeal unless the determination is against the manifest weight of the evidence.").

{¶ 19} With regard to the maintenance-and-support issue, the trial court made a factual finding that Father had supported the child "for the first twenty-five months of the child's life" or through July 2018. This is consistent with Mother's testimony that Father last provided assistance for the child by contributing to the cost of food, diapers, and clothing when she and Father resided together in 2018. Mother testified that she had not received any assistance from Father since then.

{¶ 20} As set forth above, however, the trial court found justifiable cause for Father's non-support. It reasoned that Father's imprisonment from February 2021 through June 2022 created a "significant obstacle" to his ability to maintain contact and to provide maintenance and support. The trial court noted that Father previously had provided food, diapers, and clothing for the child and had provided a debit card for Mother's use. In addition, the trial court cited Father's provision of gifts for the child during his incarceration through his mother. Finally, the trial court found it "unclear" why Mother did not seek a child-support order. The trial court opined that Mother and Father both seemed to have believed no support was required because no support was demanded.

{¶ 21} Upon review, we conclude that the trial court's justifiable-cause finding regarding Father's lack of maintenance and support was against the manifest weight of the evidence. Under R.C. 3107.07(A), a biological parent's consent to adoption is not required if he has failed without justifiable cause to provide maintenance and support as required by law or a judicial decree for a period of "at least one year" immediately preceding the adoption petition. Here the trial court found that Father supported the child until July 2018, which was nearly *four years* before Stepfather petitioned for adoption in

June 2022.

{¶ 22} Although Father's imprisonment beginning in February 2021 may have impeded his ability to provide support after that date, it did nothing to explain Father's non-support for more than two and one-half years from July 2018 until he went to prison in February 2021. As further discussed herein, this failure to provide support and maintenance in the period before Father's incarceration was relevant to whether the incarceration constituted justifiable cause for his failure to provide support and maintenance while incarcerated. Father also admittedly did not provide any maintenance and support for the child following his release from prison. Father was sent to a half-way house in June 2022. He began working in August 2022, earning $14 per hour with a subsequent raise to $19.50 per hour. Although he claimed to have set aside some money and toys for the child, he had not actually given Mother anything at the time of the adoption hearing.

{¶ 23} Even setting aside Father's actions after Stepfather filed for adoption in June 2022, the fact remains that Father provided no maintenance and support for the child from July 2018 through June 2022. Although Mother never sought court-ordered child support, Father had an independent statutory obligation to support his child. *In re Adoption of B.I.,* 2017-Ohio-9116, 101 N.E.3d 1171, at ¶ 27 ("Ohio's statutory scheme regarding families and children makes clear that there are two statuses of parental obligation: first, a general obligation of parents to support their children imposed by law in R.C. 3103.03, and second, a specific child-support obligation imposed by judicial decree pursuant to R.C. 3109.05 and Chapter 3119 that supersedes the general

obligation once the court issues its decree."); *In re Placement for Adoption of C.E.T*, 2d Dist. Montgomery No. 19566, 2003-Ohio-3783, ¶ 11 ("The juvenile court in this case has never adjudicated the issue of [mother's] obligation to support her child, which, in the absence of an adjudication, is controlled by the general statutory obligation of a parent to provide for the support of the child, found in R.C. 3103.03.").

**{¶ 24}** Father's failure to provide for his child for nearly four years before the adoption petition's filing and for more than two and one-half years before he went to prison supported a compelling inference that his incarceration for the one year immediately preceding the petition did not "cause" his non-support, justifiably or otherwise. The Eighth District Court of Appeals addressed a similar situation in *In re Apanovitch*, 8th Dist. Cuyahoga No. 40469, 1980 WL 354559 (Mar. 6, 1980). The issue there was whether a biological father, who was imprisoned during the one year prior to an adoption petition, had justifiable cause for failing to provide maintenance and support for his child. In finding no justifiable cause, the Eighth District recognized that the father had failed to provide for his child for two years before going to prison. It reasoned:

> The question before the Court is whether a wilful failure to support becomes a failure to support with justifiable cause when the parent is incarcerated. The Court is of the opinion that if it is wilful to begin with, it continues to be so even if the parent is subsequently incarcerated, at least where the original failure to support was for a substantial period of time. Having failed to support for two years, the Court will not presume the father would have changed his ways but for the fact of incarceration.

Revised Code 3107.07 provides that the consent to adoption of the parent of a minor is not required when the parent "has failed without justifiable cause * * * to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition * * *." *In re Schoeppner*, 46 Ohio St.2d 21, 345 N.E.2d 608 (1976) held that imprisonment alone did not constitute a wilful failure to support as a matter of law, but might constitute such a failure when combined with other factors. Here the Court is of the opinion that such other factors are present. Although he did attempt some communication with the child after he was imprisoned, the plain fact is that his interest in and support of the child when he was under no constraints, was totally inadequate to the needs of the child. The legislature in January of 1977 shortened the period of non-support which would obviate consent of the non-supporting parent from two years to one year. In this case, the non-support has spanned four years, two years when the father was free and two years when he was incarcerated. The Court thus holds that wilful non-support over a substantial period continues to be wilful after the non-supporting parent is incarcerated.

*Id.* at *1.

{¶ 25} We find the Eighth District's reasoning in *Apanovitch* to be persuasive and

equally applicable here.[1] Under R.C. 3107.07(A), Stepfather was required to prove Father's non-support for a period of "at least one year" immediately before the filing of the adoption petition. Stepfather actually proved that Father had failed to support his child for nearly four years immediately before the adoption petition, and more than two and one-half of those years of non-support occurred before Father's imprisonment. Under these circumstances, we are unpersuaded that Father's unjustifiable non-support before going to prison can be transformed into justifiable non-support by virtue of his OVI conviction, violation of a protection order, and resulting prison sentence. Father's history of non-support before, during, and after his imprisonment constituted clear and convincing evidence that his imprisonment did not "cause" his failure to provide for his child.

{¶ 26} Although *Apanovitch* is directly analogous to the present case, the same idea has been expressed in other adoption cases involving justifiable-cause determinations. For example, in *In re J.R.I.*, 2023-Ohio-475, 209 N.E.3d 93, this court examined justifiable cause for a parent's failure to maintain more than de minimis contact with a child. At issue was whether the lack of contact was justified by a no-contact court order. We cited and relied on a concurring opinion by Justice DeWine in *In re Adoption of A.K.*, 168 Ohio St.3d 225, 2022-Ohio-350, 198 N.E.3d 47. Therein, Justice DeWine reasoned that whether a no-contact order provides justifiable cause depends in part on

---

[1] In *Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919, the Ohio Supreme Court recognized that the test is whether a parent's non-support is "without justifiable cause," not whether the non-support is "willful." *Id.* at 105, fn. 2. While the Eighth District referred to both willful non-support and a lack of justifiable cause in *Apanovitch*, the Ohio Supreme Court acknowledged in *Bovett* "that there is a close similarity between the two standards." *Id.* In any event, the Eighth District's analysis of the issue supports our finding of no justifiable cause.

" 'the extent to which the parent's lack of contact with his or her child was truly a result of the order.' " *In re J.R.I.* at ¶ 31, quoting *In re Adoption of A.K.* at ¶ 24 (DeWine, J., concurring). A no-contact order would not justify a lack of contact where a parent previously had "sworn off any desire to have contact with the child." In such a case, "the order is not the reason for the lack of contact[.]" *In re Adoption of A.K.* at ¶ 46 (DeWine, J., concurring).

{¶ 27} This court also addressed justifiable cause for an incarcerated father's non-support in *In re Adoption of Stidham*, 2d Dist. Montgomery No. 16930, 1998 WL 656567 (Sept. 25, 1998). In that case, the biological father had failed to support his daughter for the entire nine years of her life. With regard to the one-year period preceding the adoption petition, the father worked during the first few months, was in a drug-rehabilitation facility for the middle months, and chose not to work during the last few months. Reviewing these facts, this court reasoned: "[Father] paid no support during the statutory period before he entered [the rehabilitation center], and he paid no support during the statutory period after he left. And with a view to [Father's] nine-year history relative to the basic needs of his daughter, * * * the trial court reasonably could infer that the appellant's residence at the rehabilitation center was not a justifiable cause for his routine failure to provide maintenance and support as required by R.C. 3107.07." *Id.* at *4.

{¶ 28} Finally, in *In re Adoption of Carter*, 4th Dist. Gallia No. 95 CA 11, 1995 WL 756569, the Fourth District Court of Appeals considered whether a biological father had justifiable cause for not supporting his child where he was injured for approximately the first two months of the relevant one-year period and was incarcerated for the remaining

ten months. In upholding a finding of no justifiable cause, the Fourth District reasoned:

> We note that appellant has never supported his child. When appellant received a $33,000 worker's compensation settlement in 1989, he squandered the entire settlement within thirty days on hotel bills, limousine rentals, alcohol and crack cocaine. A reasonable person would have resisted the temptation to squander the money at that speed. A reasonable person would have retained some of that money or would have retained some assets purchased with that money until at least April 5, 1990, the date appellee filed his petition to adopt the child. A reasonable person would have retained some of the money or assets for the benefit of his or her minor child.

> We should not and will not condone appellant's purposeful dissipation of his assets. Appellant should not benefit from the fact that he recklessly and rapidly squandered the entire $33,000 settlement prior to the one-year period immediately preceding the filing of the petition for adoption. Appellee's assertion that he had no funds during the relevant time period with which to support his child because he quickly expended the entire $33,000 settlement for hotel bills, limousine rentals, alcohol and crack cocaine is untenable.

*Id.* at *5-6.

{¶ 29} The foregoing cases are distinguishable from the present case in some ways. To varying degrees, however, each supports our determination that Father's non-

support of his child prior to his imprisonment was relevant to whether that imprisonment truly caused the non-support during his prison term. For the reasons set forth above, we reiterate our belief that Father's history of non-support provided clear and convincing evidence that his imprisonment did not truly and justifiably cause his lack of support for his child.

{¶ 30} The trial court's other findings also fail to support its justifiable-cause determination. The trial court noted that Father had provided food, diapers, and clothing for the child, but these events occurred prior to Mother and Father's separation in 2018. Mother testified that Father provided no support after that time. For his part, Father himself admitted providing no support after 2019.

{¶ 31} As for Father's provision of a debit card, that also occurred before he went to prison. Sometime after the parties separated, Father gave Mother the card while telling her that he had reported it stolen. During the adoption-petition hearing, Father acknowledged on cross-examination that this may be why Mother never used the card. Father's provision of a debit card that he told Mother he had reported stolen cannot reasonably be considered maintenance and support.

{¶ 32} Father's provision of the card also helped explain why Mother at least initially did not seek a formal child-support order. During the adoption-petition hearing, Mother testified that she and Father had intended the debit card to be in lieu of a formal support order. She explained:

> [Father] had asked me not to go through the child support agency for
>
> child support and said that he would give me a debit card that did not have

my name on it. I was not on the account, so I expressed my concern with that and I told him that—you know, if he wanted to make that arrangement, for my name to be on the account.

Then approximately—I don't know—maybe a week or two later, he said he reported the card stolen. And at that same time, he had been calling my employer trying to get me thrown in prison. So it was my gut feeling that he was providing that card to get me to use it to say that I stole it so he could get me put in jail for it.

Transcript Vol. I at 101.

{¶ 33} But regardless of Mother's failure to seek a child-support order, as noted above, Father retained an independent statutory obligation to support his child. Although the trial court opined that Mother and Father both seemed to have believed no support was required because no support was demanded, this conclusion was unsupported by the evidence. Father's provision of a debit card was at least an implicit recognition of his duty to support his child. During his testimony, Father himself characterized the debit card as his "child support." Moreover, Mother's acceptance of the card did nothing to suggest that she neither needed nor desired child support. Indeed, it suggested the opposite. We see no evidence to support the existence of a mutual understanding that child support was not requested or required.

{¶ 34} Finally, the trial court noted that Father's mother had given gifts to the child during Father's incarceration on his behalf. The record reflects that these gifts were given twice for the child's birthday and once for Christmas while Father was imprisoned. Nominal gifts of this nature do not constitute maintenance and support under R.C.

3107.07(A). *In re Adoption of Stidham,* 2d Dist. Montgomery No. 16930, 1998 WL 656567, at *2.

**{¶ 35}** For the foregoing reasons, we conclude that the trial court's justifiable-cause determination regarding Father's failure to provide maintenance and support for his child was against the manifest weight of the evidence. On that issue, the trial court clearly lost its way and created a manifest miscarriage of justice. Based on our review of the record, Stepfather met his burden to prove by clear and convincing evidence that Father had failed, without justifiable cause, to provide maintenance and support for his child for at least one year immediately preceding the adoption petition filing date.

**{¶ 36}** In light of this determination, we need not address Stepfather's additional argument that Father failed to have more than de minimis contact with the child during the relevant time. "Because R.C. 3107.07(A) is written in the disjunctive, either failure to communicate or failure to support during the one-year time period is sufficient to obviate the need for a parent's consent." *In re Adoption of R.M.Z.*, 2d Dist. Montgomery No. 23511, 2009-Ohio-5627, ¶ 9, citing *In re Adoption of Ford*, 166 Ohio App.3d 161, 2006-Ohio-1889, 849 N.E.2d 330, ¶ 4 (3d Dist.), citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 304, 408 N.E.2d 680 (1980).

**{¶ 37}** Stepfather's first assignment of error is sustained. The second assignment of error is overruled as moot, as it raises the same issue under an incorrect standard of review.

### B. Best-Interest Determination

**{¶ 38}** In his third assignment of error, Stepfather contends the trial court

"committed plain error by not finalizing the stepparent adoption when it found that it was in the best interest of the child but that Father's failure to contact and/or support the child was justified for the applicable period and therefore his consent was required."

{¶ 39} Contrary to Stepfather's argument, the trial court did not find that adoption was in the child's best interest. Although the evidentiary hearing encompassed that issue, the trial court declined to decide it. Given its finding that Father's consent was required, the trial court explained that it did "not reach a decision" regarding the best interest of the child. In our view, the proper procedure is to remand the case for the trial court to resolve the best-interest question in the first instance. Although Father's consent to adoption is not required, the trial court still must find that adoption by Stepfather is in the child's best interest in order for the petition to be granted. *In re Adoption of J.A.M.*, 2d Dist. Greene No. 2022-CA-14, 2022-Ohio-2313, ¶ 9, 11. Accordingly, Stepfather's third assignment of error is overruled.

### III. Conclusion

{¶ 40} Having sustained Stepfather's first assignment of error, we reverse the trial court's judgment denying his adoption petition. The case is remanded for the trial court to determine whether adoption is in the best interest of the child.

. . . . . . . . . . . .

WELBAUM, P.J. and HUFFMAN, J., concur.